Brewer, J.
On the eighteenth of June, 1868, the parties hereto made the following contract:
“Articles of agreement made and entered into this eighteenth day of June, 1868, between the board of county commissioners of Miami county, Kansas, party of the first part, and the Kansas & Neosho Yalley Bailroad Company, party of the second part, witnesseth that the party of the first part, in consideration of the sum of five dollars, the receipt of which is hereby acknowledged, and a compliance with the conditions hereinafter mentioned on the part of the party of the second part, sell to the said party of the second part one hundred and fifty thousand dollars of the stock held by said county of Miami in said road, for which the bonds of said county are to be issued and delivered to said company. The said sale and transfer is upon this express condition: that the said railroad company shall grade, tie, lay down the iron on a good substantial road-bed, and operate regularly said road, by running freight and passenger cars from- Kansas City, Missouri, to the city of Paola, Kansas, and, as near as practicable, on the present surveyed and located line of said road, through the said city of Paola, through the western part thereof; the said line of road to be so constructed and operated to the city of Paola within twelve months, and to the southern boundary of the county of Miami within sixteen months of this date; that seventy-five thousand dollars of said bonds are to be delivered when said road shall be constructed and in operation to the city of Paola, in the-mannér as aforesaid; and seventy-five thousand dollars of said bonds are to be delivered when said road shall be constructed and *in operation to the southern line of said county, as aforesaid. It is further mutually agreed that J. T. Haughey shall be a trustee tO' hold -such bonds in trust for the parties to this agreement, and to be-by him delivered up to the party of the second part when said roach shall be constructed and in operation, as herein stated, and in proportion as hereinbefore set forth. It is further mutually agreed that the party of the second part shall not ask or demand of the party o£ the first part any other assessments or levies than those specified ia said bonds, which includes the face of the said bonds, and the interest thereon from the date of delivery, provided the matured coupons, afc delivery of said bonds, shall be detached from said bonds by said trustee, and delivered to the board of county commissioners of Miami county. And it is further mutually agreed that the vote cast on said Stock before delivery, when not in conflict with the conditions of this-agreement, shall be cast with the active capital controlling the line? of the road; - that the stock of the party Of the first part in said rail *376 road company shall be transferred to the party of the second part when the said road shall be constructed and in operation through th'e county of Miami, as hereinbefore stated. Should the party of the second part fail to comply with the conditions agreed to be performed on their part within the time herein specified, the trustee named shall return said bonds to the board of county commissioners of Miami county.
“In witness whereof, the parties to this agreement have hereunto signed their names. “EL Rice.
“John Tontz.
“Cyrus Shaw.
Board of Commissioners.”
“K. Coates,
“Pres. K. & N. Y. R. R. Co.”
Thereafter'the defendants in error brought their action in the district court of Miami county, asking to have this contract “declared canceled and to be null and void and of no effect in law or equity, ” and that “both parties be released from the obligations of the same.” A demurrer to the petition was overruled, and this is the error assigned.
The substantial question is as to the power of the commissioners to make such a contract. The contract, as will be seen, is one to sell the stock owned by the county in the railroad corporation, — stock subscribed by the county, and for which payment was to be made in county bonds. This contract contains some stipulations as to the route over which the road was to be built, and the time within which it was to be completed to the southern boundary of the county. These stipulations are stated in the contract to be part of the consideration of the sale and transfer of the stock. How far they may affect this case will'be considered hereafter. The present inquiry is, can the county commissioners, without express and specific legislation, and without direct authority from the voters, make a valid sale and transfer of stock in a railroad corporation, belonging to the county, and issued to it upon a subscription authorized by the voters thereof? The powers of a county and its officers are prescribed by statute, and to that we must look for an answer to the inquiry. The law of 1862 was in force at the time of this sale, but the provisions applicable to this question are similar to those of the General Statutes. Section 1, c. 52, Comp. Laws, p. 409, declares that “each organized county shall be a body corporate and politic,” and then defines its powers. Subdivision 3 of this section reads as follows: “Third. To sell and convey any real or personal estate owned by the county, and make such orders respecting the same as may be deemed conducive to the interests of the inhabitants.” Section 2 provides “that any real or personal estate heretofore or which may be hereafter conveyed to any county shall be deemed the prop *377 •erty of such county.” Section 3 provides that “the powers of a county, as a body politic and corporate, shall be exercised by a board of county commissioners therefor.” This chapter, in section 15, further defines the powers of the county commissioners as follows: “Section 15. The board of county commissioners of each county ■shall have power, at any meeting, — First, to make such orders concerning the property belonging to the county as they may deem expedient ; * * * fifth, to represent the county, and have the care ■of the county property, and the management of the business and concerns of the county in all eases where no other provision is made by law.” See, also, Gen. St. p. 253, c. 25, §§ 1-3, 16.
So far as any question in this case is concerned, there is Nowhere in the statute any limitation or qualification of the absolute and comprehensive power granted by these sections to the •commissioners. The county is authorized to purchase this stock from the corporation. It does so purchase it. It holds it by an absolute title, and not in trust for any specific use or purpose. Its title is as unlimited and unqualified as the title of an individual to similar stock which he has bought and paid for. True, commissioners cannot without express legislation bind the county by a subscription to the stock of a railroad corporation. Such a contract is foreign to the ordinary purposes of county organization. But, when duly authorized, the stock thereby acquired is the absolute property of the county. No trust or limitation attaches to the right to hold, use, or convey it. The peculiarity goes, not to the holding, or the title by which it is held, but simply to the manner of acquiring it. Being personal property, held by such absolute title, the county can sell and convey it, and the officers authorized to make the sale are the commissioners. It is useless to enlarge upon this, for many words will not make plainer or clearer than the language of the statute the nature and extent of the powers conferred. We have given the subject careful examination and thought, to see if there be anything in the nature of the property itself, the mode of its acquisition, or the title by which it is held, which would limit the absolute power given by these sections to the commissioners to dispose of all personal property belonging to the county, and have found nothing. It seems to us, therefore, the inquiry must be answered in the affirmative, and that the commissioners can make a valid sale and transfer of such stock without any specific legislation, or direct authority from the voters. Semmes v. Mayor of Columbus, 19 Ga. 471; Dill. Mun. Corp. § 396.
The county board having the power to sell, and having sold, such sale can be avoided only under circumstances and conditions which would avoid a similar sale of property owned by individuals. The commissioners are agents, with full power of sale. The prin-cipal may avoid a feale made by *his agent, and recover the property sold from the purchaser, when such sale is accomplished by fraud practiced by the purchaser upon the agent, the lat *378 ter being innocent of wrong; when it is made by collusion between the purchaser and agent; and in some cases, when there has been a mutual mistake of fact, and also, according to some authorities, when there has been a mutual mistake of law. Nothing in the record suggests any mistake by either party, so that we need only inquire whether there be fraud or collusion alleged in the petition sufficient to avoid the contract. The petition contains six counts, each purporting to state a cause of action. Perhaps it will be the more satisfactory method to examine each cause of action in detail.
The first count states that on the eighteenth of June, 1868, the county of Miami was the owner and holder of $150,000 of the capital stock of the Missouri River, Fort Scott & Gulf Railroad Company, and that on that day the then board of county commissioners of said county entered into the written contract set forth in the petition; that there was no consideration passed from the railroad company to the county, and that the sum of five dollars specified in the contract was never paid; that the county never received from the defendant any considerationfor the sale of said stock; that the county has never transferred said stock, or any part thereof, to the railroad company; and that said contract is void in law and equity, because of the total failure of consideration therefor. In other words, one of the parties to an ex-ecutory contract of sale, an instrument not negotiable in its character, asks a court of chancery to declare the contract null and void, and to cancel it, on the ground that neither party has executed it. It seems as though the mere statement of the proposition would show this to be outside the scope of equity interference. The contract being nonnegotiable, an assignee can acquire no greater rights than the railroad company. If the contract be ultra vires, and void, its illegality can be successfully pleaded as a defense to any suit to compel performance. If it be valid and binding, the railroad company may never ^'perform on its part, nor ask performance by the county; and if valid, and the company do- perform, why should the county be released from its obligation ? Field v. Holbrook, 6 Duer, 597.
The second count of the petition alleges that the contract was made without authority of law, or the assent of the voters. We have already considered and decided the question here presented.
The third count alleges that the contract was not under the seal of either the county or the railroad company, and therefore void. If seals were necessary, a court of equity would compel the parties to affix them, rather than declare an otherwise perfect contract null and void.
The fourth count states the ownership of the stock by the county, the making of the contract, and then alleges that the stock so owned by the county was worth $150,000, and that the sum of five dollars was a grossly inadequate consideration for the same; that the railroad company and the county commissioners knew that the stock was *379 worth $150,000, and that a sale of the same for five dollars was unconscionable. An attempt is here made to show that the contract ought to be avoided on the ground of inadequacy of price. Sales are set aside, in some cases, where the price paid is inadequate to the value of the thing sold, but only when the inadequacy is so gross as to be proof of fraud, or (in eases of sales by agents) of collusion between purchaser and agent. Story, in his work on Sales, (section 324,) says: “Mere inadequacy of price affords no ground to set aside a sale, unless it be of so gross a nature, and given under such circumstances, as to afford a necessary presumption of fraud or imposition. * * * Indeed, however small the price may be, if it be an actual price, and not merely a nominal one, it will be sufficient as between the parties.” And in Parsons on Contracts (volume 1, p. 436) it is said that “if the consideration is valuable, it need not be adequate; that is, the court will not inquire into the exact proportion between the value of the consideration and that of the thing to be done for it. But it must have real value; *and if this be very small, this circumstance may, even by itself, and still more when connected with other indications, imply or sustain a charge of fraud.” See, also, the same volume, page 492, and notes. By the Boman law a sale for one-half the value of the property might be set aside for inadequacy. 1 Dom. Civ. Law, B. 1, tit. 2, §§ 3, 9, art. 1. The common law presents no such fixed rule, and only, as stated in the quotations, when the inadequacy is so gross as to carry with it evidence of fraud, can a sale be on that ground avoided. In the case at bar, if the contract ivas simply for the sale of $150,000 of property for five dollars, the inadequacy would be so strong and manifest as to shock the conscience. It would be impossible to resist the conclusion that there was fraud or collusion in the sale. But the consideration was not simply the five dollars, but the completion, within specified times, of different portions of the railroad through the limits of the county. We are not advised of the conditions of the subscription by which the county originally acquired the stock, and hence cannot say that this stipulation was not of great value to the county. It may be that more of road was required to be built by this contract than by the terms of the original subscription. We cannot ignore the fact of this stipulation, for it is expressly named in the contract as a part of the consideration. We cannot declare a contract void on the ground of inadequacy of consideration, when it simply appears that a part of the consideration is grossly inadequate, and there is no showing as to the extent and value of the remaining portion.
The fifth count presents no question substantially different from that presented by the second count, heretofore considered. It merely alleges that the sale was unauthorized, and in violation of public trust and confidence.
The sixth count states the ownership of the stock by the county, the making of the contract, and that the railroad company did not *380 ■construct and equip and operate a first-class railway line to the city of Paola within twelve months after the date of such contract, “and in all things failed, *negleeted, and refused to comply with the various provisions and agreements contained in said pretended contract and agreement.” This shows a failure on the part of the railroad company to perform the conditions imposed by the contract upon it as a consideration of the transfer of the stock. It does not show whether the stock has or has not been transferred. If it has not been transferred, then the county has an ample defense to any action which may be brought by the railroad company or its assignee to compel a transfer, and there is no necessity for the interference of a court of chancery. If it has been transferred, such fact should appear in the pleading. We cannot assume a fact, not alleged, to exist, for the sake of upholding a pleading deficient without it. We do not mean to be understood as deciding that, if it had been alleged, the count would be good as against a demurrer, or entitle the plaintiff to relief in a court of equity. It may be that a transfer of the stock, before performance by the railroad company, would be a waiver of a right of the county to insist upon performance, or at least of the time of performance, or it may be that the county’s sole relief would be an action for damages, and not one for cancellation of the contract and recovery of the stock. It will •be time enough to decide those questions when fairly before us in the record. All that we decide is that the mere allegation of nonperformance by one party to an executory contract, without any allegation of performance by the other, discloses no ground for the interference of a court of equity. These are all the counts in the petition, and, as none of them seems to us sufficient, the several demurrers should have been sustained.
Counsel for defendant in error ably and ingeniously argued that this whole contract is simply a subterfuge; that the commissioners were not authorized to donate the bonds of the county to the railroad company, but only to issue the bonds in payment for stock, dollar for •dollar, while the practical effect of the subscription and contract was really a donation of bonds. Taking the value of the stock to be the amount named, and ignoring the speedy completion of the road as a *valuable element of the consideration, there would be great force in the suggestions of counsel. But, unadvised as we are of the terms of the original subscription, we cannot say that that which the parties to the contract have named as part of the consideration was not an actual and valuable consideration, and one sufficient to sustain the contract.
The judgment of the district court will be reversed, and the ease remanded, with instructions to sustain the demurrers.
(All the justices concurring.)